UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NANOLAB TECHNOLOGIES, INC., | Case No. 5:14-cv-02699-PSG |
| Plaintiff, | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ROANOKE CLAIMS SERVICES, INC., et al., | **(Re: Docket No. 41)** |
| Defendants. | |

This is a case about the international journey of a spectrometer and who is financially responsible for paying for the damage it suffered along the way. Defendant Certain Underwriters at Lloyd's moves for summary judgment on the basis that Plaintiff Nanolab Technologies, Inc.'s conduct indisputably allows for complete rescission of the insurance contract. Because the court is convinced that genuine issues of material fact remain, the motion is DENIED.

**I.**

In early 2014, Nanolab purchased a spectrometer from a university in Mexico City.[1] Nanolab engaged D.T. Gruelle, a freight forwarding company, who had a preexisting Marine Open Cargo Policy with Underwriters.[2] In February, Underwriters issued a Certificate of Insurance

---

[1] *See* Docket No. 41-2 at 27:6-19; Docket No. 41-4 at 26:4-9.

[2] *See* Docket No. 41-10.

1
Case No. 5:14-02699-PSG
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

insuring Nanolab for transportation of the IMS system from Mexico City to Milpitas, California.[3] Nanolab sent its director Ming Hong Yang to Mexico to inspect the spectrometer and assist with its packing.[4] Because of the university's loading dock constraints, D.T. Gruelle arranged to have a small, non-air-ride van transport the spectrometer from the university to the outskirts of Mexico City, where it was transferred to an air-ride truck.[5] Upon arrival in Milpitas, Nanolab noted that the spectrometer had been damaged at some point during the journey.[6] Even after repair, the spectrometer only regained marginal operation.[7]

This suit followed. Nanolab alleges breach of contract against Underwriters and seeks payment under the insurance policy.[8]

## II.

This court has jurisdiction under 28 U.S.C. § 1331. The parties further consent to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case.[9] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[10] All evidence must be viewed in the light most favorable to the non-moving

---

[3] *See* Docket No. 41-11.

[4] *See* Docket No. 41-5 at 47:1-49:21, 60:23-61:8, 165:17-172:7.

[5] *See id.* at 186:3-194:23; Docket No. 41-11.

[6] *See* Docket No. 41-2 at 89:23-91:16; Docket No. 41-4.

[7] *See* Docket No. 45-3 at 51:2-52:18, 53:2-22.

[8] *See* Docket No. 1-3.

[9] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[10] *See id.*

party. At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[11]  Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[12]  If this burden is met, the burden shifts to the non-moving party.[13]

### III.

***First***, Underwriters seeks summary judgment on Nanolab's breach of contract claim based on the doctrine of *uberrimae fidei*[14] which, Underwriters argues provides for complete rescission of the underlying contract.  "The doctrine of *uberrimae fidei* requires a marine insurance applicant ***even if not asked***, to reveal every fact within his/her knowledge that is material to the risk."[15]  Essential to this dispute, then, is whether the insurance contract at issue is properly considered a marine insurance contract for the purposes of *uberrimae fidei*.  Nanolab argues that marine insurance can only insure against losses that are "specifically maritime in character"[16] and that because the entire journey at issue occurred over land by truck, the contract cannot possibly be a

---

[11] *House v. Bell*, 547 U.S.518, 559-60 (2006).

[12] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[13] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[14] Nanolab objects to the late introduction of the *uberrimae fidei* defense because it was never pleaded in Underwriters' answer.  Underwriters contends that it was not aware of the facts substantiating the defense until earlier this year and could not have pleaded it any earlier.  Nanolab further objects that allowing such a defense at this late stage in the case is unduly prejudicial because Nanolab would have taken discovery into the underwriting process had it known about the defense.  But the court finds that all discovery relevant to *uberrimae fidei* is encompassed by the concealment defense, which was timely pleaded.  As such, and without more specificity as to exactly what discovery Nanolab would have taken if the new defense had been pleaded earlier, the court finds that excluding the defense is unnecessary.  To the extent that the court needs to consider leave to amend Underwriters' affirmative defenses to add *uberrimae fidei*, leave is GRANTED.

[15] *Certain Underwriters at Lloyd's, London v. Inlet Fisheries, Inc.*, 518 F.3d 645, 655 (9th Cir. 2008) (citation omitted) (emphasis in original); *see* Cal. Ins. Code § 1900 ("In marine insurance, each party is bound to communicate . . . (a) All the information which he possesses and which is material to the risk . . . (b) The exact and whole truth in relation to all matters that he represents or, upon inquiry assumes to disclose."); *Certain Underwriters at Lloyds v. Montford*, 52 F.3d 219, 222 (9th Cir. 1995) ("[T]he insured is bound, even if not asked, to reveal every fact within his/her knowledge that is material to the risk.").

[16] *Inlet Fisheries, Inc.*, 518 F.3d at 654.

3

Case No. 5:14-02699-PSG
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

marine contract. But under California law, marine insurance specifically contemplates the transportation of all goods "in connection with any and all risks or perils of navigation, transit, or transportation, including war risks, on or under any seas or other waters, on land or in the air."[17] By the plain language of the statute, there can be no question that transportation over land is covered in a marine insurance contract. And by virtue of the policy itself, which is titled "Marine Open Cargo Policy," Nanolab cannot make a colorable argue that it was not on notice of the fact that marine insurance would apply.[18]

That being said, the court finds that there is a genuine question of material fact as to whether Nanolab violated its duty under *uberrimae fidei* that should properly be decided by a jury. Under *uberrimae fidei*, the insurer may rescind the insurance contract "if it can show either intentional misrepresentation of a fact, regardless of materiality, or nondisclosure of a fact material to the risk, regardless of intent."[19] To be material, the fact "must be something which would have

---

[17] Cal. Ins. Code § 103:

Marine insurance includes insurance against any and all kinds of loss of or damage to:

(a) Vessels, craft, aircraft, cars, automobiles and vehicles of every kind (excluding aircraft and automobiles operating under their own power or while in storage not incidental to transportation), as well as all goods, freights, cargoes, merchandise, effects, disbursements, profits, money, bullion, securities, choses in action, evidences of debt, valuable papers, bottomry and respondentia interest and all other kinds of property, and interests therein, in respect to, appertaining to it in connection with any and all risks or perils of navigation, transit, or transportation, including war risks, on or under any seas or other waters, on land or in the air, or while being assembled, packed, crated, cabled, compressed or similarly prepared for shipment or while awaiting the same, or during any delays, storage, transshipment, or reshipment incident thereto including marine builder's risks, and all personal property floater risks.

(b) Person or to property in connection with or appertaining to a marine, inland marine, transit or transportation insurance including liability for loss of or damage arising out of or in connection with the construction, repair, maintenance or use of the subject matter of such insurance (but not including life insurance or surety bonds); but except as herein specified, shall not mean insurances against loss by reason of bodily injury to the person. Inland marine insurance shall be deemed to include hull insurance on water pleasure craft no used for commercial purposes of a size and type to be determined by the commissioner.

[18] *See* Docket No. 41-10.

[19] *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 420 (9th Cir. 1998) (internal quotation marks and citations omitted).

4
Case No. 5:14-02699-PSG
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

controlled the underwriter's decision to accept the risk."[20]  If, but for the undisclosed fact, the insurer would not have underwritten the policy or disclosure of the fact would have affected the insurer's decision to insure at a particular premium, the fact is material.[21]

Underwriters claims that by withholding the fact that the spectrometer would be transported across Mexico City in a non-air-ride van before it would be transferred to the disclosed air-ride truck with an ultimate destination of Milpitas, California, Nanolab violated its duty of disclosure. Underwriters argues that this information was essential to its decision about whether to insure the journey and at what rate.  In other words, had Underwriters known about the use of a non-air-ride van, Underwriters may well have refused to issue a policy or would have varied the terms.

The evidence in the record supports the notion that Nanolab was aware that two different trucks would be used to transport the spectrometer, that Underwriters did not learn of this until after the policy had been issued and that Underwriters did not learn until recently that Nanolab had long since known that more than one truck would be used on the journey.  While a reasonable person could conclude that specific details of transport are material to an insurance contract, the record shows that Underwriters' own insurance quote indicated nothing more specific than "truck."[22]  There was no mention of an air-ride requirement or that only one truck could be used to complete the entire journey.  Notably, the only requirement in the quote that was specific to the journey itself was that "whenever available, all haulers in Mexico are to utilize the toll road systems."[23]  If Underwriters really needed to know more information in order to decide whether to insure the trip, a reasonable jury could conclude that they would not have been able to provide a

---

[20] *Washington Int'l Ins. Co. v. Mellone*, 773 F. Supp. 189, 191 (C.D. Cal. 1990).

[21] *See Trinh v. Metro. Life Ins. Co.*, 894 F. Supp. 1368, 1372 (N.D. Cal. 1995); *Inlet Fisheries, Inc.*, 518 F.3d at 655.

[22] *See* Docket No. 46 at Exhs. A-C.  The Certificate of Service and Marine Cargo Policy also lack specific restrictions based on the number of trucks or the types of trucks used suggesting that this kind of information might not have been material to the underwriting process.  *See* Docket Nos. 41-10, 41-11.

[23] Docket No. 46 at Exh. C.

quote based on such a generic description. Based on this record, a reasonable jury could conclude that under *uberrimae fidei*, Nanolab was not required to disclose any additional information to Underwriters.

**Second**, Underwriters argues that the spectrometer was damaged due to insufficient and unsuitable packing and preparation which is excluded from coverage under the Certificate of Insurance.[24] But there is a clear factual dispute about whether Nanolab employee Yang in fact supervised the packing of the spectrometer, and if so, whether such supervision constitutes packing such to fall within the exclusion. There is also a factual dispute about whether the packing of the spectrometer was even the cause of the damage. For all anyone knows, it could have been damaged when it was riding across Mexico City in a non-air-ride van, when it was transferred to the air-ride truck, at any point between Mexico City and Milpitas, California or when it hit the curb upon arriving at its final destination.[25] The court must leave the determination of these facts to a jury.

**SO ORDERED.**

Dated: May 15, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[24] The Certificate of Insurance excludes coverage for:

> Loss, damage or expense caused by insufficiency or unsuitability packing or preparation of the goods insured to withstand the ordinary incidents of the insured transit where such packing or preparation is carried out by the claimant or their employees or prior to the attachment of this insurance (for the purpose of these Clauses 'packing' shall be deemed to include towage in a container and 'employees' shall not include independent contractors). *See* Docket No. 41-11.

[25] Nanolab launches several evidentiary objections to the evidence that Underwriters provides in support of their motion for summary judgment. *See* Docket Nos. 43, 44. The court need not consider these objections at this time.